Lee County vs. Abrahams.

LEE COUNTY VS. ABRAHAMS.

31 571
e73 309
q73 310

1. CIRCUIT CLERK: *Settlement for funds of county and State, jurisdiction, etc.*
   It is the duty of the clerk of the Circuit Court to render an account to that court of all money received by him as such clerk for the use of the State or county. And it is the province of the court to audit and adjust his accounts, according to the records, dockets, papers, etc., of the court, and to make and certify duplicate bills of the settlement to the County Court. But if the Circuit Court neglects to require him to report during his term of office, the County Court may, under its general jurisdiction, force him to settle.

2. RECORDER: *Settlement for county funds, jurisdiction, etc.*
   It is the duty of the county recorder to file with the County Court an account of all money received by him as recorder, for the use of the county; and that court has jurisdiction to force him to settle and pay the same over.

APPEAL from *Lee* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

*J. J. Hornor,* for appellant.

ENGLISH, CH. J.:

On the 29th July, 1875, the following order was made by the County Court of Lee County, in the matter of the settlement of D. B. Abrahams, as former clerk of the Circuit Court and *ex officio* recorder of the county.

"On this day comes special attorney, employed by this court to examine the reports and settlements of all county officers who are required by law to make settlement with the County Court of all funds in their hands belonging to the county, and report all delinquents, and reports that D. B. Abrahams was circuit clerk and *ex officio* recorder of Lee County, from the —— day of April, 1873, to the 30th day of May, 1874, when the office of circuit clerk in Lee County was abolished, by act of the legislature, and that, upon examination of the records, it no where appears that said Abrahams, as such clerk, has made the settlement with the board of supervisors required by law, of the taxes and

county revenue which were, or ought to have been, collected by him, or paid the same into the hands of the proper officer; and it appearing, to the satisfaction of the court, that the said Abrahams, as clerk as aforesaid, is delinquent in his settlement as required by law, the court proceeds to adjust the accounts of said delinquent, and finds the amount due from him to the county as follows: A tax of fifty cents on each of the following number of certificates of record on instruments of writing recorded in the recorder's office, collected by said delinquent, and payable into the county treasury in lawful money of the United States:

| | |
|---|---:|
| In record of mortgages, " B " 216; tax | $108.00 |
| In trust deed record, " A " 266, tax | 133.00 |
| In record of deeds, " A " 206, tax | 103.00 |
| Marriage certificates, 70, tax | 35.00 |
| Commissions and bonds, 8, tax | 4.00 |
| Credentials, 3 | 1.50 |
| Also, original writs in equity, 13 | 6.50 |
| Also, original writs in law, 23 | 11.50 |
| Execution, 1 | 50 |

Total revenue due from said delinquent to the county, and appropriated by law to the fund for general purposes........:... $403.00

It appears that prior to the entry of this order, and on the same day, Abrahams, as ex-circuit clerk, filed in the court a report, by way of general settlement, that he did not make any collections of money for the county of Lee during his term of office, and had no funds in his hands belonging to the county.

The above settlement, made by the court, was entered of record, and after the expiration of ten days, the clerk of the court charged Abrahams with a penalty of 25 per cent. on the amount found, as above, to be due to the county from him, for failing to pay the same over to the county treasurer, etc.

On the 19th of August, 1875, a citation was issued to Abrahams, as late clerk of the Circuit Court, and *ex officio* recorder, reciting the above settlement, the imposition of the penalty, etc., and notifying him that unless he appeared at the next term of the court and showed good cause why such settlement should be set aside, judgment would be rendered against him, etc.

He appeared at the return term (October, 1875) and demurred for want of jurisdiction in the court; the demurrer was overruled, and declining to answer over, judgment was rendered against him, in favor of the county, for $403 in United States currency, and $100.75 penalty thereon, with fifty per cent. per annum upon the whole until paid.

He appealed to the Circuit Court, where he again demurred for want of jurisdiction in the County Court, insisting that the Circuit Court was the proper forum to settle and adjust his accounts, as its former clerk, etc.

The court sustained the demurrer, and dismissed the cause for want of jurisdiction, and the county appealed to this court.

The statutes provide:

"The clerks of the several courts of record shall collect and pay over to the collectors, etc., all taxes on writs, executions, official seals, and other sums of money by whatever name designated coming to their hands and belonging to the State or county, and shall render accounts at each term of the respective courts, verified by oath of all moneys which have been received to the use of the State or county not before accounted for." Miller's Digest, sec. 196.

"They shall keep a true account of all fines, penalties, forfeitures and judgments imposed, adjudged or rendered in favor of the State or any county by their respective courts, distinguishing those payable to the State from those payable to the county, and shall keep the same open for the inspection of the judges of

their respective courts and the collector of the revenue." Id., sec. 197.

"It shall be the duty of the judges of such courts to audit and adjust the accounts of their respective clerks according to the records, dockets and papers of their respective courts, and to make two separate bills of the several sums wherewith their clerks shall be chargeable, specifying on what account the same is payable, and certify a copy thereof to the clerk of the County Court, who shall file and charge the same accordingly, and the other shall be certified and delivered to the County Treasurer." Id., 198.

No doubt it was the duty of the appellee, as Clerk of the Circuit Court, to render an account to that court, of all moneys received by him, as such clerk, to the use of the State or county, and it was the province of the court to audit and adjust his accounts, according to the records, dockets, and papers, etc., of the court, and to make and certify duplicate bills of the settlement, etc., as required in the statutes above copied.

The appellee was doubtless appointed Clerk of the Circuit Court of Lee County under the provisions of the act of April 17th, 1873 (Gantt's Dig., Ch. 21), which provided for separate Circuit Clerks in counties having a population of 10,000, etc.

And by act of April 23d, 1873 (Acts of 1873, p. 201), Lee County was brought within the provisions of this act. But the act of April 23d, 1873, was repealed by act of May 20th, 1874 (called session), and thereby the office of Circuit Clerk in Lee County abolished.

By the act of April 17th, 1873, under which appellee held the office of Circuit Clerk, he was made *ex-officio* Recorder of that county, and was required to take an oath and give a bond as such Recorder. Gantt's Digest, Ch. 113.

Appellee, therefore, held two offices, he was clerk of the Circuit Court, and he was Recorder. The offices were as distinct as if held by two persons instead of one. As Recorder, he was the clerk of no court.

The Circuit Court could not tell, by an inspection of its "records, dockets and papers," what moneys appellee had received for the county as recorder, and the law did not require him, as recorder, to make any settlement with the Circuit Court.

By section 7, Miller's Digest, there is a tax of $3 on each criminal conviction; a tax of fifty cents on each original writ, and execution issued out of any of the courts of the State, and the sum of fifty cents on the certificate of record of each instrument of writing recorded in the recorder's office. These are all collected for county purposes.

It was the duty of the appellee, as recorder, to collect the tax upon all instruments recorded, and to account to the County Court for the same, and to pay the money over as required by law. Miller's Digest, secs. 209, 202, 216.

As Clerk of the Circuit Court it was his duty to collect the tax on original writs, executions, etc., and report his collections to the Circuit Court, to be audited, adjusted and certified to the County Court, etc., as required by the above statute.

It seems that he reported no collections while in office as clerk or recorder.

The County Court charged him with the tax on thirteen original writs in equity, twenty-three at law, and one execution. All the other items charged against him are for the tax on recorder's certificates. As to these items, the County Court certainly had jurisdiction to rule him to a settlement. Miller's Digest, sec. 209 to 218.

As to the tax on writs issued by him as clerk, the Circuit Court should have ruled him to a report, if in fact he failed to

report as required by law, audited and adjusted his accounts, and certified them to the County Court, etc.

But if the Circuit Court neglected to rule him to report during his whole term of office, we see no reason why the County Court, having original jurisdiction in matters relating to county taxes, etc., might not force him to a settlement. Miller's Dig., sec. 214, etc.

The judgment is reversed and the cause remanded to the Circuit Court, with instructions to reinstate the cause, overrule the demurrer, and for further proceedings.