4-8666                                        217 S. W. 2d 620

Opinion delivered February 21, 1949.

*Gordon & Gordon,* for appellant.

*Chas. C. Eddy* and *Chas. L. Farish,* for appellee.

George Rose Smith, J.   Appellant sued for damages for personal injuries resulting from gunshot wounds inflicted by appellee.   Upon the filing of his complaint he obtained a writ of garnishment against a Morrilton bank.   This appeal is from the circuit court's order dissolving the writ. The question presented is one of first impression: Is a writ of garnishment obtainable as a matter of course before judgment in a tort action against a resident of this State?

Appellant relies principally upon Ark. Stats. (1947), § 31-501, reading in part: "In all cases where any plaintiff may begin an action in any court of record . . . and such plaintiff may have reason to believe that any

other person is indebted to the defendant . . . such plaintiff may sue out a writ of garnishment,'' with a proviso requiring bond when the writ is issued before judgment.

The letter of the statute undoubtedly supports appellant's position, but the Act is to be construed in the light of its legislative and judicial background. We have pointed out that garnishment is a species of attachment. *Standard Lumber Co.* v. *Henry,* 189 Ark. 513, 74 S. W. 2d 226. In fact, the writ originated as an aid to attachment. in instances where the property could not be manually seized, as in the case of a debt, or where it were better left in the possession of a bailee, as in the case of hides in the vat. At this stage in the writ's development the garnishee was not a party to the suit and so was not liable to judgment therein for disobedience of the writ; the plaintiff's recourse against the garnishee was by separate action. Later garnishment became an independent remedy, the garnishee being a party to the suit. The latter form is sometimes called judicial garnishment.

In view of the close relationship between attachment and garnishment, it would be somewhat surprising to find that the legislature had authorized the writ of garnishment in a tort action between residents while denying the remedy of attachment in the same situation. A study of the history of attachment and garnishment in Arkansas convinces us that this inconsistency does not exist in our law.

The Revised Statutes recognized both types of garnishment. Chapter 13, governing attachments, made frequent reference to garnishment proceedings as an aid to the principal writ. Chapter 69, entitled Garnishment, authorized the issuance of the writ after judgment had been entered in any case and provided for judgment against the garnishee in the original action.

Next came the Civil Code, adopted in 1868. Title VIII, governing provisional remedies, contemplated the writ of garnishment as an aid to attachment, but the Code wholly failed to provide for judicial garnishment.

A section of Act 48 of 1871, now appearing as Ark. Stats. (1947), § 31-142, broadened the scope of the Code in some respects, but it was decided in *Leingardt* v. *Deitz,* 30 Ark. 224, that this statute applied before judgment only to the writ of garnishment in attachment proceedings. In 1885 the court suggested, without deciding, that the enactment of the Civil Code might have abolished judicial garnishment altogether, since the Code covered the field anew. *Giles* v. *Hicks,* 45 Ark. 271.

This, then, was the background when the General Assembly adopted Act 115 of 1889, "An Act to Provide the Procedure in Judicial Garnishment." It is almost a verbatim copy of Chapter 69 of the Revised Statutes, mentioned above. In view of our remarks in *Giles* v. *Hicks, supra,* it can hardly be doubted that the legislative intention was merely to revive judicial garnishment. By its terms the 1889 statute made the writ available only after judgment.

Finally, by Act 134 of 1895 the legislature amended § 1 of the 1889 statute to read as it does now. One has only to compare the original section with the amendatory provision to see that the legislative purpose was to make judicial garnishment available before judgment as well as afterward. The 1889 Act began: "In all cases where any plaintiff may have obtained a judgment in any court of record . . ." As amended the clause reads: "In all cases where any plaintiff *may begin an action* in any court of record . . ." (We have stressed the change.) The reference to "all cases" is obviously a mere repetition of the original wording.

Even though the 1895 Act was intended primarily to permit judicial garnishment before judgment, appellant insists that the legislature also meant to extend the remedy to every case, whether sounding in contract or tort. The entire history of attachment and garnishment, not only in Arkansas but elsewhere, is opposed to this notion. These remedies have been confined to contract cases almost without exception. We have said that nonresidence of the defendant is the sole ground for attachment in a tort action. *Sinclair Refining Co.*

v. *Bounds,* 198 Ark. 149, 127 S. W. 2d 629. See, also, Act 153 of 1947, noted in 1 Ark. L. Rev. 223. Statutes relating to garnishment must be strictly construed. *Mo. Pac. R. Co.* v. *McLendon,* 185 Ark. 204, 46 S. W. 2d 626. We are unable to believe that the General Assembly chose the language of the 1895 Act, plainly intended to accomplish an entirely different purpose, as a means of introducing such a drastic change in established procedure. It follows that judicial garnishment before judgment must fit into our jurisprudence in its true form, as a species of attachment, and as such it is subject to the restrictions applicable to the broader remedy.

Affirmed.

Justices FRANK G. SMITH and ROBINS dissent.

ROBINS, J., dissenting. I respectfully dissent.

It is conceded by the majority of the court that, under the letter of the last legislative enactment on the subject, a claim growing out of tort is included among those for which garnishment may be issued before judgment. But, say the majority, the historical background of the matter is such that, in the opinion of the majority, the legislature did not intend so to include a cause of action arising from tort. The best way to interpret a statute is to take the plain English of it. Judges are treading on dangerous ground when they assume authority to disregard unmistakable language of the law— and attempt to justify so doing merely by opining that the legislature did not intend to do what it did do.