1064

WALTERS *v.* BURNETT.

5-1523                                  312 S. W. 2d 344

Opinion delivered April 21, 1958.

*Claude A. Fuller,* for appellant.

*Festus O. Butt,* for appellee.

CARLETON HARRIS, Chief Justice. This case is here for the second time on appeal.[1] Appellee, A. P. Burnett, a non-resident of this state, listed certain property with Florence Loucks for sale or rent. Thomas Walters, appellant herein, entered into a contract with Mrs. Loucks, as agent of Burnett, to lease a certain residence, located in Eureka Springs, from November 1, 1956, to May 1, 1957, for an agreed monthly rental of $35.00. The lease also contained an option giving Walters the option to purchase said property for the sum of $4,250. On Octo-

---

[1] See *Walters* v. *Burnett,* 228 Ark. 45, 305 S. W. 2d 549. The cause was remanded because no final order had been made from which an appeal would lie.

ber 29, Walters instituted suit in the Carroll Chancery Court against Burnett, Florence Loucks, and one C. C. King, alleging his option to purchase the property, and further alleging that King, a real estate agent in the city of Eureka Springs, was attempting to sell the property to some other person. The prayer, as to appellee, asked that Burnett be required to deliver possession of the property on November 1, and be required to comply with the terms and provisions of the contract between the two. Burnett, who was neither personally nor constructively served, demurred to the complaint on the grounds that same did not state facts sufficient to constitute a cause of action; further, waiving service of process, he denied the material allegations of the complaint, asserted that Walters had seized and entered upon the premises; denied that he had authorized any agent to execute the lease or that he had given Walters an option to purchase the premises, and asserted that such lease was wholly void for want of authority to support its execution. He further alleged that the acts of Walters had resulted in the loss of a cash sale of the property for the sum of $4,250, and asked that the cause be "relegated to appropriate court for ascertainment of damages herein." King also demurred to the complaint,[2] and Florence Loucks has never filed any pleading. The court sustained the demurrer in part, which action was appealed. On remand, the trial court entered the following order:

"Mandate from Supreme Court being filed herein and this cause coming on for consideration, after dismissal of appeal by Supreme Court, and the cause as to lease having become moot, and plaintiff refuses to plead further, and no relief being asked as to defendant Loucks and said defendant being in default. The motion of defendants to dismiss action is granted and this cause is dismissed at cost of plaintiff."

From such action of the court comes this appeal.

---

[2] The demurrer was sustained by the court, and no further pleadings filed or action taken as to King.

Appellee points out, and argues, that the suit was prematurely instituted, since no rights were to accrue to appellant under the contract until November 1, 1956, and the suit was filed on October 29, 1956. Without entering into a discussion of one's right to institute litigation designed to protect a future interest, let it suffice to say that the suit actually was not commenced on October 29th, for the reason that appellant did nothing more than file the complaint. According to the record, no summons was issued for Burnett, nor was any affidavit made for publication of a warning order, and no such order was made by the clerk.[3] Accordingly, no suit was commenced as to Burnett at that time.[4] *Am. Ry. Express Co.* v. *Reeves,* 173 Ark. 273, 292 S. W. 109; *Missouri Pacific Railroad Company* v. *McLendon,* 185 Ark. 204, 46 S. W. 2d 626.

While the trial court held that the cause as to the lease had become moot, appellee argues that the entire cause (including option) has become moot. It is, of course, true that appellant cannot presently lease the property from November 1, 1956, to May 31, 1957, but that fact, within itself, does not mean that he has lost his rights under the option. The allegations in the complaint recite that Walters stood ready to carry out the terms and provisions of the contract, and there is nothing in the record to indicate otherwise. The filing of the suit preserved any rights appellant might have under the agreement; as far as the record discloses, appellant was diligent in trying to assert and protect his rights, and Walters certainly cannot be penalized because the court ruled adversely to his contention.

Having disposed of the contention that the suit was prematurely commenced, and the further contention that the cause is now moot, we are left only with the propriety or legality of the trial court's action in sustaining the demurrer in part, because of the invalidity of Section 3 of the lease agreement. This is the sole remaining question raised by this appeal. If Section 3 is valid,

---

[3] See Sec. 27-301 and Sec. 27-357.
[4] Burnett filed his demurrer and answer on December 10, 1956, thus entering his appearance.

appellant's rights cannot be adjudicated until other issues, raised by the pleadings, are determined. This brings us to a discussion of the lease agreement. The lease consists of four paragraphs, but only three are pertinent to our discussion. The first three sections provide as follows:

"(1). The said Lessor hereby agrees and demise to said Lessee, the following described premises, *viz*:

The two-story residence situated at 256 Spring Street, in the City of Eureka Springs, Arkansas from the first day of November, 1956, to the 31st day of May, 1957.

(2) The said Lessee hereby and promises to pay to said Lessor, the sum of $35.00 on the 1st day of each and every month during the continuance hereof, as rent for said premises, and 10 per cent interest on the amount thereof, from the time any such payment shall become due, if Lessee shall make default.

(3) The Lessor, agrees to give an option to buy to said Lessee, said property at 256 Spring Street, Eureka Springs, up to May 31st, 1957, for the sum of $4,250.00. Lessee agrees to buy or vacate by May 31st, 1957. Lessor agrees to allow all rent paid in to be applied on the purchase price, terms of sale to be determined later."

The court sustained Burnett's demurrer to paragraph three and to all parts of the complaint based thereon, because of a want of consideration for the option contract, and because the contractual provisions are "indefinite, uncertain, and meaningless." We do not agree. We have held such agreements valid. *Thomas* v. *Johnston,* 78 Ark. 574, 95 S. W. 468. There, this Court said:

"The parties to an agreement for the sale of land may also contract with the right, at the election of either party in the future, upon the performance or nonperformance of certain conditions, to treat the transaction either as a purchase and sale contract or a lease."

As stated in *Corpus Juris Secundum,* Vol. 51, page 636:

"Where the lease and the option constitute but one contract, the provisions of which are interdependent, the consideration for the lease supports the option; in other words, the agreement to pay rent or do other acts, and the fulfillment of such obligations on the part of the lessee, will support the option as well as the right to occupy under the lease. Thus, an option to purchase contained in a lease is not subject to attack on the ground that it is unilateral and lacks mutuality in that it binds the lessor notwithstanding the lessee is not bound to purchase."

The agreement to pay rent, accordingly, constituted sufficient consideration for the option to purchase.

Nor do we agree that the provisions of Section 3 are indefinite, uncertain, or meaningless. The description is sufficient to support specific performance. *Ray* v. *Robben*, 225 Ark. 824, 285 S. W. 2d 907. The price of $4,-250 is certainly definite, and the time in which the option is to be exercised is stated with clarity. The ruling of the court was evidently based upon the language "terms of sale to be determined later", but this language is not actually necessary to the validity of the agreement, and is, in a sense, surplusage. The elements essential to this option having been stated, *viz.*, description, price, and time, the provisions of Section 3 are adequate. If the parties should be unable to agree upon the terms or conditions, it would simply mean that Walters would be required to pay cash for the property in exercising the option.

Accordingly, we conclude the trial court was in error in holding paragraph 3 of the lease void, and in sustaining the demurrer as to the alleged option contract and all parts of the complaint based thereon. The cause is remanded with directions to overrule the demurrer, and proceed in a manner not inconsistent with this opinion.